<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

WILLIAM NELSON,

                Plaintiff,

        v.

INDEGENE, INC.,

                Defendant.

Civil Action No. 24-4927 (MAS) (JTQ)

**MEMORANDUM OPINION**

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant Indegene, Inc.'s ("Indegene" or "Defendant") Motion to Dismiss (ECF No. 9) Plaintiff William Nelson's ("Nelson" or "Plaintiff") Complaint (ECF No. 1). Plaintiff opposed and filed a Cross-Motion to Amend the Complaint (ECF No. 14), and Defendant replied and opposed the Cross-Motion to Amend the Complaint (ECF No. 15). After careful consideration of the parties' submissions, the Court decides Defendant's motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendant's Motion to Dismiss is granted.

**I.**      <u>**BACKGROUND**</u>

    **A.**     **Factual Background[1]**

Nelson currently resides in Illinois, and he is a former employee of Indegene. (Compl. ¶¶ 7-8, ECF No. 1.) He was employed from April 18, 2022, until his employment was terminated

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

on April 14, 2023, as the Senior Director of Business Development, Omnichannel Marketing. (*Id.* ¶¶ 8, 11.) Nelson's qualifications for that role included a Master of Business Administration from the University of Chicago Booth School of Business and two decades of "extensive experience in financial portfolio growth, acquisitions and integrations." (*Id.* ¶ 12.) As part of his role, Plaintiff was also an investor in Indegene through Restricted Stock Units ("RSUs"). (*Id.* ¶ 17.)

Indegene is a company that provides "an integrated end-to-end commercialization solution to healthcare organizations and pharmaceutical enterprises." (*Id.* ¶ 9.) It is based in India and has an office in Princeton, New Jersey. (*Id.* ¶ 10.)

In his role as Senior Director, Plaintiff reported directly to the Vice President of Biotech Strategy and Business Development, Howard Genderson ("Genderson"), who in turn reported to the Senior Vice President and Unit Owner, Tim Moore ("Moore"). (*Id.* ¶¶ 13-14.) Genderson emailed Indegene employees on March 16, 2023, including Nelson, announcing that "Emerging Biotech has closed [Indegene's] first DevCom deal with Cingulate," and that Indegene would focus on helping Cingulate[2] get its Attention Deficit/Hyperactivity Disorder ("ADHD") drug . . . to market. (*Id.* ¶ 17, 19.) The email message further stated that the deal "has a total value of $110M dollars over [five] years," and the parties were still finalizing the first Statement of Work ("SOW") for $2.5M, so that they could begin work the next month. (*Id.* ¶ 20.) The SOW would outline the services that Indegene would perform over the next five years to earn the $110M. (*Id.*) Indegene also reported this deal in two S-1 filings with the Securities and Exchange Commission ("SEC"), in a press release, and on its LinkedIn page. (*Id.* ¶¶ 21-24.)

---

[2] Cingulate is a clinical-stage biopharmaceutical company that is publicly traded on the NASDAQ as "CING." (Compl. ¶ 18.)

Around the time the deal was announced, Cingulate had only $7.5 million in current assets and cash available. (*Id.* ¶ 27.) Nelson further alleges that "Cingulate has no revenue, no FDA products to sell, a weak balance sheet, and is in danger of being delisted according to its most recent 8-K." (*Id.* ¶ 28.) As such, Nelson determined that "Cingulate would have to generate an estimated $1 billion in annual revenues selling ADHD drugs" to support the statements made in Genderson's email message. (*Id.* ¶ 29.) Plaintiff further alleges that Indegene was aware of Cingulate's financial position because of a "Fireside Chat" hosted in February 2020, where an Indegene employee performed due diligence on each company that attended, including Cingulate. (*Id.* ¶ 34.)

Plaintiff alleges that after discovering the amount of revenue Cingulate would have to generate, as well as the fact that no SOW had been signed yet—meaning no financial commitment had been made—"it became clear to him that Indegene was attempting to create booked revenue for [Indegene] that was non-existent." (*Id.* ¶¶ 30-31.) Plaintiff alleges that the transaction was a "ruse concocted by both companies for their mutual benefit," and its announcement misled Indegene's stockholders and holders of RSUs about the value of the deal and Indegene as a whole leading up to Indegene's Initial Public Offering ("IPO"). (*Id.* ¶¶ 32-33.)

After coming to these conclusions, in March 2023 and April 2023, Plaintiff reported to Genderson and Moore "that Indegene's exclusivity deal with Cingulate . . . comprised an effort to fraudulently book revenue for Indegene's upcoming IPO." (*Id.* ¶ 36.) Plaintiff also asked Genderson and Moore why Cingulate was even getting exclusivity when Plaintiff had dialogues with other clients that produced ADHD products. (*Id.* ¶¶ 37-38.)

Approximately two weeks after these discussions, on April 14, 2023, Plaintiff was informed that Indegene was terminating his employment, noting "Position Elimination" as the

3

reason behind his termination. (*Id.* ¶¶ 41, 43.) Plaintiff avers that this reason was pretextual, and he was actually terminated in retaliation for his whistleblowing about the deal with Cingulate. (*Id.* ¶ 43.) In support of this contention, Plaintiff alleges that Indegene hired a Vice President of Business Development in February 2023 who also reported to Genderson and performed ninety percent of the same duties that Plaintiff did. (*Id.*)

Indegene sent Plaintiff a Separation Agreement about two months after his termination, on June 5, 2023, which waived any whistleblower claims against Indegene. (*Id.* ¶ 46.) Approximately a week later, Plaintiff hired an attorney who sent a demand letter to Indegene summarizing the fraudulent misrepresentation of revenue that Plaintiff previously told his supervisors about and Plaintiff's retaliatory discharge concerning his whistleblowing of the same. (*Id.* ¶ 47.) Plaintiff alleges that on September 28, 2023, Defendant took further retaliatory action against him by sending confidentiality breach notifications to Plaintiff's attorney. (*Id.* ¶ 49.)

**B.    Procedural Background**

Plaintiff commenced this action on April 12, 2024, against Indegene, alleging that it wrongfully discharged him in violation of the Sarbanes Oxley Act of 2002 ("SOX") ("Count One") and New Jersey's *Pierce* Doctrine ("Count Two"), and it retaliated against Plaintiff in violation of the New Jersey Conscientious Employee Protection Act ("CEPA") ("Count Three"). (*Id.* ¶¶ 51-72.) On June 21, 2024, Defendant moved to dismiss the Complaint (Def.'s Moving Br., ECF No. 9), and on September 17, 2024, Nelson opposed and filed a Cross-Motion to Amend the Complaint (Pl.'s Opp'n Br., ECF No. 14). Defendant replied in support of its Motion to Dismiss and opposed Plaintiff's Cross-Motion to Amend the Complaint on October 24, 2024. (Def.'s Reply Br., ECF No. 15.)

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a)(2)[3] "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[3] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

**B.      Rule 15 Standard**

Under Rule 15, courts should grant motions to amend pleadings "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit embraces a liberal amendment standard, to ensure "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990). "[A] general presumption exists in favor of allowing a party to amend its pleadings." *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 576 (D.N.J. 2002) (citations omitted). Leave to amend may only be denied if the Court finds: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the non-moving party; or (4) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**III.    DISCUSSION**

**A.      SOX Claims**

Plaintiff brings Count One under SOX. (Compl. ¶¶ 51-58.) He alleges Defendant terminated his position in retaliation for Plaintiff's protected whistleblowing. (*Id.* ¶¶ 55-56.) Defendant argues that Plaintiff's SOX claim should be dismissed for two reasons: (1) the claim is barred because Plaintiff failed to submit a claim with the Occupational Safety and Health Administration ("OSHA") within 180-days; and (2) Defendant is not an entity covered by SOX. (Def.'s Moving Br. 5-6, 8-18.) Plaintiff argues in opposition that he has since submitted a complaint to OSHA and urges this Court to equitably toll or otherwise stay this proceeding pending the

6

completion of the administrative process. (Pl.'s Opp'n Br. 8-9.)[4] For the reasons below, the Court

will grant Defendant's Motion to Dismiss.

SOX enables whistleblowers to file a complaint with the Secretary of Labor when they

believe they were discharged due to protected activity. 18 U.S.C. § 1514A(b)(1). To seek relief,

discharged employees must file a complaint with OSHA, which is acting on behalf of the Secretary

of Labor, and pursue administrative exhaustion, *or*, if OSHA fails to issue a final decision within

180 days, the employee may bring an action in federal district court. *Id.*; *see also Gulden v. Exxon*

*Mobil Corp.*, 119 F.4th 299, 304-05 (3d Cir. 2024) (describing role of OSHA in administrative

exhaustion process and "kick out" provision in 18 U.S.C. § 1514A(b)(1)(b)). SOX requires an

employee to file the OSHA complaint "not later than 180 days after the date on which the violation

occurs, or after the date on which the employee became aware of the violation." 18 U.S.C.

§ 1514A(b)(2)(D).

Prior to filing in federal court, employees must exhaust the administrative appeals

procedure delineated in SOX: (1) file an OSHA complaint; (2) if the OSHA complaint is denied,

appeal to the Department of Labor ("DOL") Administrative Review Board; and (3) once the

complainant has exhausted DOL complaint procedure, the complainant, following the

---

[4] In essence, Plaintiff requests that this Court effectuate two different stays. First, an equitable tolling of SOX's statute of limitations, which applies to the 180-day timeline a plaintiff must follow in filing an OSHA complaint. (Pl.'s Opp'n Br. 8-9 ("The court should exercise its discretion to toll the 180 days until the fraud occurred at the time of Indegene's public filing . . ." and "[while] OSHA does not recognize equitable tolling, this court can exercise its discretion to do so.").) Second, Plaintiff requests that this Court stay the overall case pending the outcome of Plaintiff's administrative appeal. (*Id.* at 9 ("Defendant's motion to dismiss Plaintiff's SOX claim should be denied and/or Plaintiff's SOX claim stayed pending the outcome of the OSHA administrative proceeding.").) However, as Plaintiff has not sufficiently plead facts showing that he has met the administrative exhaustion requirements under SOX, the Court will not reach the requests contained in Plaintiff's Cross-Motion.

Administrative Procedure Act, may seek judicial review. *See Flake v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 248 F. App'x 287, 288-89 (3d Cir. 2007) (summarizing procedural steps outlined in SOX).

Plaintiff's complaint contains no information about whether he has exhausted the administrative appeals process. (*See generally* Compl.; Pl.'s Opp'n Br. 9 ("Plaintiff has filed an objection and requested a hearing before an ALJ on September 13, 2024.").) SOX requires administrative exhaustion as a condition precedent *before* filing suit in federal court. *See Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 154 (2018) ("To recover under § 1514A, an aggrieved employee must exhaust administrative remedies by 'filing a complaint with the Secretary of Labor.'" (quoting 18 U.S.C. § 1514A(b)(1)(A)); *Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 491 (3d Cir. 2014) (comparing Sarbanes-Oxley and Dodd-Frank and finding Sarbanes-Oxley has exhaustion of administrative remedies requirement while Dodd-Frank has no such requirement); *Karupaiyan v. Knipper Health*, No. 22-2557, 2024 WL 989822, at *5 (D.N.J. Mar. 7, 2024) ("Before filing a civil action in federal district court, a plaintiff asserting a violation of the Sarbanes-Oxley Act must first exhaust administrative remedies by filing a complaint with the Secretary of Labor."); *Tani v. FPL/Next Era Energy*, 811 F. Supp. 2d 1004, 1021 (D. Del. 2011) (dismissing Sarbanes-Oxley retaliation action because "in order to bring a claim under the Sarbanes–Oxley Act, an employee must first file a complaint with [OSHA] and afford OSHA the opportunity to resolve the allegations administratively" (internal quotations and citations omitted)).

Because Plaintiff has not alleged whether he exhausted SOX's administrative appeals process, the Court cannot consider his SOX claims. (*See generally* Compl.; *see also* Def.'s Moving Br. 9 ("[Plaintiff] does not allege anywhere in the Complaint that he ever filed a complaint with

OSHA.").) While Plaintiff's Cross-Motion alleges that he filed an OSHA complaint *after* filing his federal court complaint, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 120 (D.N.J. 2017) (quoting *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). Because Plaintiff has not sufficiently plead whether he has satisfied SOX's administrative exhaustion requirement, and the Court cannot consider alleged facts from his briefing, the motion to dismiss will be granted.

### B.    Pierce Doctrine and CEPA Claims

In Counts II and III, Plaintiff brings state law claims under *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 512 (1980) ("*Pierce* Claim") and CEPA. (Compl. ¶¶ 59-72.)[5] Where all federal claims against a party have been dismissed from an action, "the district court may, in its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims." *Rothman v. City of Northfield*, 716 F. Supp. 2d 369, 373 (D.N.J. 2010) (quoting *Lentz v. Mason*, 961 F. Supp 709, 717 (D.N.J. 1997)). As the Court has dismissed Plaintiff's SOX claim, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### C.    The Cross-Motion to Amend

The Court will also deny Plaintiff's Cross-Motion to Amend as procedurally insufficient. (Pl.'s Opp'n Br. 3, 22-23.) Under Local Civil Rule 15.1, "a party who seeks leave to amend a

---

[5] As an additional note, Plaintiff cannot assert claims under both *Pierce* and CEPA because "in CEPA[,] the [New Jersey] Legislature codified [the New Jersey Supreme Court's] ruling in [*Pierce*], which protected employees against discharges that violated a clear mandate of public policy." *Barratt v. Cushman & Wakefield of N.J., Inc.*, 675 A.2d 1094, 1098 (N.J. 1996); *Young v. Schering Corp.*, 660 A.2d 1153, 1159 (N. J. 1995) (noting "[a]lthough the enactment of CEPA did not abolish the *Pierce* common-law cause of action, we are persuaded that the Legislature intended that the N.J. S[tat]. A[nn]. [§] 34:19-8 waiver prevent an employee from pursuing both statutory and common-law retaliatory discharge causes of action" (internal citation omitted)).

pleading shall . . . attach to the motion a copy of the proposed amended pleading." Loc. Civ. R. 15.1(a)(1). Plaintiff did not attach a copy of the proposed amended pleading, so the motion will be denied.[6]

## IV.   **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is granted. Plaintiff's complaint is dismissed without prejudice.[7] Plaintiff will have thirty days to refile his state law claims in state court if he so chooses. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[6] Further, because Plaintiff seeks to amend the complaint to add a state law claim—common law fraud—the Court would decline to exercise supplemental jurisdiction, given the dismissal of the SOX claim. *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983) ("[T]he trial court may properly deny leave when the amendment would not withstand a motion to dismiss [under Rule 12(b)(6)].").

[7] The dismissal is without prejudice to Plaintiff filing a new complaint once he has completed the administrative exhaustion of his claims.